STANDARD PLUNGER ELEVATOR CO. v. STOKES et al.

(District Court, S. D. New York.  May 8, 1912.)

1. PATENTS (§ 298*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.
    In a patent suit, if there appears to be any fair question as to infringement, a preliminary injunction will not be granted.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 478; Dec. Dig. § 298.*
    Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

2. PATENTS (§ 298*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—
    PLUNGER ELEVATORS.
    A preliminary injunction against alleged infringement of the Larsson patent, No. 963,905, for a plunger hydraulic elevator, denied on the ground that infringement was not shown with sufficient certainty.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 478; Dec. Dig. § 298.*]

In Equity. Suit by the Standard Plunger Elevator Company against William E. D. Stokes, Fred A. Jones, Thure Larsson, and the Greeley Square Hotel Company. On motion for preliminary injunction. Denied.

Edwards, Sager & Wooster and Alexander T. Mason, for complainant.

Southgate & Southgate, for defendants Jones and Larsson.

Ulman & Dennen, for defendant Greeley Square Hotel Co.

MAYER, District Judge. This is an application for a preliminary injunction to enjoin the defendants from infringing claims 1, 2, and 3 of United States letters patent numbered 963,905, dated July

12, 1910, granted in the name of the defendant Larsson, and covering a "plunger hydraulic elevator." The same parties were before the court on a motion for a preliminary injunction relating to patent No. 899,224, and in that case a preliminary injunction was granted by Judge Ward.

The defenses in the present case are, in substance, the same as those passed upon in the case before Judge Ward, with the exception that the defendants urge that the structure they proposed to install in the hotel of the Greeley Square Hotel Company does not infringe the patent now in suit. It is unnecessary to discuss at length the legal effect of the agreement of September 13, 1902 (Exhibit C), for that agreement has been construed by Judge Ward, and with his construction I agree.

It is claimed, however, that, although Larsson was in the employ of the complainant corporation when the patent in suit was applied for on August 1, 1904, yet that he made the invention prior to his employment by the complainant, and therefore that the complainant is not entitled to the benefit of the provisions of the agreement of September 13, 1902, in respect thereof. This contention is not sustained either by the intent of the parties as gathered from the instrument or by the particular language employed. The agreement provides that Larsson grants to the complainant company the exclusive license to use "all other future patents and inventions devised or acquired by him with relation to elevators and their appliances." What was manifestly in the minds of the parties as borne out by their contemplated relations was that the complainant company should have the exclusive right to use all inventions devised or acquired by Larsson during his employment and all patents, whether the invention had been previously devised or was devised during the term of employment. From any point of view, therefore, the complainant is the exclusive licensee of the patent in suit No. 963,905. The defendants are estopped from questioning the validity of the patent; but, so far as the question of infringement is concerned, the defendants are in the same position as any third party, and they are entitled to a consideration of what the patent covers, and to assert that their structure is not tributary to the patent in suit.

[1] If, therefore, there appears to be any fair question as to infringement, it is the practice in this circuit to refuse preliminary injunction. Reed Mfg. Co. v. Smith & Winchester Co. et al., 107 Fed. 719–720, 46 C. C. A. 601.

[2] The important question, therefore, is whether the structure complained of is an infringement. The patent relates to an improvement in the "plunger hydraulic elevator." This type of elevator consists, in substance, of a cylinder sunk into the ground a distance equal to the rise of the elevator, and into this cylinder is fitted a plunger of smaller diameter, usually made hollow. The stuffing box on the top of the cylinder contains a series of leather or rubber packings which fit tightly to the plunger. The plunger slides up and down through the stuffing box, which thus forms a liquid seal, preventing the escape of water between the stuffing box and the plunger. The

car or platform is arranged on top of the plunger. When water under pressure is let into the cylinder, the plunger is forced upward to lift the car, while, on the other hand, when water is let out of the cylinder, the plunger lowers in the cylinder, allowing the car to come down. The patent in suit covers a simple, but highly valuable, safety appliance. It is necessary to provide a guiding means at the end of the plunger called a plunger guide, so that, in case of accident, such as failure to shut the water off while the car is going up, the plunger will be forced out of the working cylinder. If the plunger guide is resilient so that it will pass through the stuffing box of the cylinder, the plunger is liable to pass out of the cylinder at considerable speed, and then drop back on top of the stuffing box or to its side, and cause a serious accident. On the other hand, if the plunger guide cannot pass through the stuffing box, it will tear off the stuffing box, thus breaking the cylinder, or tear off the plunger guide, which will drop back in the bottom of the cylinder, and be removable therefrom only at considerable expense and trouble. Unless removed, the car could not go to the bottom of its run. The device of the patent in suit provides the guiding means and also the safety factor protecting the cylinder by the expedient of a connection between the guiding means and the end of the plunger, which shall be so constructed as to allow the water to flow through the stuffing box when the car exceeds its normal upward travel. In such event, the reduced area of the connection permits the water to flow through the top of the stuffing box without injuring any of the parts of the apparatus, and thereupon the plunger is relieved from the pressure tending to send it upward, and the car will stop without damaging any of the apparatus. It has been the practice since almost the beginning of the art to put rigid guides on the bottom end of the plunger to keep it from swaying. This was accomplished in the so-called Higgins patent, No. 181,263, dated August 22, 1876.

It is also claimed that it was old to relieve the water pressure, but it is insisted that in the old construction there was no guide at the lower end of the plunger, and therefore that without such guide on a long run elevator the plunger will vibrate to such an extent as to render the operation dangerous.

It is also claimed that there were installed in the Ansonia Hotel prior to September, 1902, under Larsson patent No. 781,435, devices having flexible guides, but not having pressure relieving means whereby, when the working part of the plunger exceeds its normal upward travel, the pressure will be relieved without allowing the plunger to escape from the control of the guiding mechanism. In the exhibits referred to by the defendant (Larsson Exhibits 2 and 3) rigid guides and channels are shown, but those channels cannot become operative until the guides have been torn off by the stuffing box or the stuffing box damaged by the guides. In the construction shown in Larsson Exhibit No. 4, there are evidently no means for relieving pressure before the guides strike the stuffing box.

The complainant urges that the defendants have not pointed out any construction where there has been a combination of a guide for

preventing the vibration of the plunger and a reduced connection for relieving the pressure before the guides strike the stuffing box. The construction of the defendants which is here attacked has the guides and the means for relieving the water pressure before the guides strike the stuffing box, but defendants claim that their construction does not respond to the terms of claim 1, 2, and 3 of the patent of the plaintiff. These claims are as follows:

"1. The combination with a cylinder, plunger and stuffing box of a hydraulic elevator, of a guiding means connected to the lower end of the plunger and arranged to engage the stuffing box, the connection between the guiding means and end of the plunger being constructed to allow the water to escape through the stuffing box when the plunger exceeds its normal travel.

"2. The combination with a cylinder, plunger and stuffing box of a hydraulic elevator, of a guiding means for the lower end of the plunger, and a reduced connection between said guiding means and the end of the plunger, whereby water is allowed to escape through the stuffing box.

"3. The combination with a cylinder, plunger and stuffing box of a hydraulic elevator, of a guiding means for the lower end of the plunger, the lower end of the plunger having a reduced connection to the guiding means."

Examining defendants' structure as illustrated in Larsson Exhibit No. 5 and described in the affidavits, it appears that that structure consists of an ordinary cylinder plunger and stuffing box. The plunger slides up and down the stuffing box, and on the bottom of the plunger are arranged four guiding wings. Eight holes are bored through the plunger, and, if the plunger exceeds its normal run, these holes will run above the stuffing box, and the pressure inside of the cylinder will be relieved by water flowing out of these holes in the plunger. The guides are not constructed to go up to or engage the stuffing box. When the water pressure in the cylinder is released, the guides are several feet below the stuffing box, and the escape of water does not take place through the stuffing box, but through the holes in the plunger. The plunger is made of the same smooth diameter its entire length, and the seal between the plunger and the stuffing box is never broken.

The defendants claim that these relief holes in the plunger are an old and ordinary feature which has been used for many years by Robert Wetherill & Co., Incorporated, the employers of the defendants Jones and Larsson.

Comparing, therefore, the defendant's structure with the claims, it is apparent that the guiding means are not "arranged to engage the stuffing box," and that there is no connection between the guiding means and the plunger constructed so as to allow. the water to escape through the stuffing box. Further, the reduced connection specified in claims 2 and 3 is not to be found in the defendants' structure. There is a good deal of discussion as to how broad the patent is, and as to the limitations in the claims. It may be here remarked that the complainant does not contend for a broad construction of its patent such as would include the devices in elevators installed in the Ansonia Hotel, but, on the contrary, states that the Ansonia devices do not disclose the invention of the patent in suit. This brings us, then, to the limitations.

It is true that the device shown in Larsson Exhibit No. 5 performs

the same functions as the corresponding parts of figures 5 and 6 of the patent in suit. Of course, it is elementary that the same functions may be performed and the same result attained, but without infringement. The complainant urges that the defendants' device responds literally to the claims in suit, and that those claims need not be expanded or modified in any degree. It seems to me, however, that there is a substantial controversy here, and that it cannot be said with reasonable certainty that the complainant must succeed at final hearing. I am inclined to think that the fundamental thought of claim 1 is the arrangement to engage the stuffing box and the connection to allow the water to escape through the stuffing box. The fundamental thought of invention sought to be secured by claim No. 2 is the reduced connection between the guiding means and the end of the plunger, whereby the water is allowed to escape through the stuffing box, and in claim No. 3 the reduced connection from the lower end of the plunger to the guiding means. The complainant says that these contentions are mere quibbles, and ignore the specification of the patent in suit, which shows clearly that it is only under abnormal conditions that the guiding means of claim 1 will "engage the stuffing box," and that, on the other hand, there is no doubt that defendants' guiding means will engage the stuffing box in the event of an abnormal run of the elevator.

I am inclined to think, however, as above stated, that what the inventor had in mind in claim 1 was to accomplish the result by the engagement with the stuffing box therein described, while in the defendants' structure it is not expected that the stuffing box will be engaged except in some extraordinary situation. So, too, I think the inventive thought described in claims Nos. 2 and 3 was the reduced connection which obviously is not employed in the defendants' structure.

The complainant urges, however, that, in any event, the defendants come within the authority of Time Telegraph Co. v. Himmer & Carey (C. C.) 19 Fed. 322, and similar cases, but I am of the opinion that they have not shown facts sufficient to sustain satisfactorily the burden in this regard upon this application. Certain of the features employed in defendants' structure are concededly old, and, within well-known restrictions, the defendant Larsson had the right, after his contract had expired, to use his inventive genius in any direction or manner which did not conflict with the licenses granted to and the contractual relations engaged in with the complainant company.

Whatever may be the result on final hearing, the complainant's case on this application for preliminary injunction is not complete to the point of reasonable certainty, for it is by no means clear that the defendants' structure infringes, and admittedly there has not been a prior adjudication or a complete recognition by acquiescence.

The motion for preliminary injunction is denied.